UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM CONNELLY | : | PRISONER<br>CIVIL NO. 3:00CV720(JCH) |
| | : | |
| v. | : | |
| | : | |
| DAVID COSGROVE, ET AL | : | MAY 10, 2006 |

**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

This is a civil rights action filed by a *pro se* plaintiff pursuant to 42 U.S.C. § 1983 against six State of Connecticut Department of Correction officials; Mark Strange, Virginia Golumba, John O'Neil, Christine Whidden, John Cupka, and Jamie Serrano, (hereinafter "the defendants"). The plaintiff has filed this action pursuant to §1983, alleging a variety of vaguely alleged violations of his Fourth, Fifth Sixth and Fourteenth Amendment rights under the federal constitution, and state law claims of assault, defamation and invasion of privacy. The defendants are sued in their individual capacity and the plaintiff seeks unspecified compensatory and punitive damages and injunctive relief from defendant Cupka.

This motion for summary judgment seeks a judgment in favor of the defendants on all claims. As the attached Statement of Facts, exhibits, and the instant memorandum of law demonstrate, the defendants are entitled to summary judgment as a matter of law.

**FACTS**

At all times relevant to his complaint, the plaintiff was incarcerated at McDougal Correctional Institution ("MCI") and later, at a Greensville, Virginia Correctional Center ("Greensville"). Specifically, the plaintiff alleges that; defendant Golemba failed to properly calculate his release date; that while at MCI and defendant Strange, was the Warden he was

denied visitation by relatives, had his cell and property searched, was improperly transferred to Greensville, was removed from his prison job, was chemically interrogated; that defendants Whidden and O'Neil, intercepted, confiscated, and did not timely deliver his personal and legal mail and/or viewed it outside of his presence; that defendant O'Neil also depleted the prison library resources and fired him from his job as library assistant; that defendant Serrano filmed his strip search prior to his transfer to Greensville and then permitted its viewing for entertainment purposes; and that defendant Cupka failed to award him good time credit for his job, failed to respond to his inquiries, dissemated confidential information about the plaintiff to inmates and staff, interfered with his legal mail, and also chemically interrogated him.

For a more detailed explanation of the facts and evidence supporting summary judgment, the defendants respectfully refer the court and the parties to the Local Rule 9(c) Statement of Facts filed with this memorandum of law. As the evidence therein demonstrates, there are no genuine issues as to any material fact in dispute and the plaintiff has not established any violation of his rights, consequently the defendants are entitled to judgment as a matter of law on all of the plaintiff's state and federal claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual

dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id.,* at 255. *See also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 11 S.Ct. 1313, 113 L.Ed.2d 246 (1991). In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which is designed to secure the just, speedy and inexpensive determination of every action.

*Celotex, Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Those facts that are material will be identified by the substantive law governing the case. *Anderson,* 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. *Knight v. Fire Insurance Company*, 804 F.2d 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). The evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third

persons, and hearsay which does not fall under one or more exceptions listed in rules 803-805 of the Federal Rules of Evidence, may not be properly considered. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.*, 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stansy Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, the plaintiff must point to specific evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

If used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capitol Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 541 (2d Cir.), *cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, at 323-324.

## ARGUMENT

**I.    THE PLAINITFF'S CLAIMS AGAINST THE DEFENDANTS LACK MERIT**

The allegations in the plaintiff's complaint against the six defendants are not supported by the evidence or the law. The allegations against each defendant are addressed individually for purposes of clarity, and as set forth below, each of the defendants are entitled to summary judgment. None of the allegations are supported by evidence, and in any event, they do not rise to the level of a constitutional violation. Finally, the plaintiff's request for injunctive relief against defendant Cupka should be denied as moot, because the plaintiff is no housed at Greensville where Cupka served in his capacity for the Department of Correction.

A.      Claim I:    Defendant Golemba

The plaintiff's claim that defendant Golemba failed to properly calculate his release date is incorrect. Exhibit L, para. 6; Def. Stmt Facts, para. 19. Moreover, this is not grounds for a §1983 claim, but rather for a habeas corpus action, for which the plaintiff has already filed and obtained relief.

The essence of a habeas corpus is an attack by a person in custody upon the legality of that custody. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1833, 36 L.Ed.2d 439 (1973). The traditional function of the writ is to secure release from illegal custody. *Id.* Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the fact or length of their confinement. *Id.*, at 93 S.Ct. 1836. The plaintiff is free to file a habeas corpus action at any time challenging his conditions of confinement pursuant to CGS 52-466, and if denied, he is required to appeal it or else be barred from suit for not fully exhausting his state court remedies. See 28 U.S.C. §2254(b). As the evidence in the defendant's Statement of Facts demonstrates, the plaintiff filed for habeas relief when he was at Greensville, disputing his 7-Day Job Credit under the interstate compact custody agreement. Pursuant to that habeas the Interstate Compact Office researched his claim and granted him approximately 149 days of confirmed 7-Day Job Credit while he was housed out of state. Exhibit L, para. 10; Def. Stmt Facts, para. 22. His maximum release date is currently October 9, 2022 and his estimated release date is February 2018. Exhibit L, para. 11. Consequently, his claim against defendant Golemba is without factual or legal merit.

B.      Claim II:    Defendant Strange

The plaintiff's claims against defendant Strange, that he "blackballed" him from his prison library job, delayed or denied his relatives visitation, "chemically interrogated him", and

5

retaliated against him by sending him to Greensville, lack merit because he is sued only for his supervisory role as Warden of MCI and not for any alleged direct or personal involvement in any violation of the plaintiff's rights. Indeed, the plaintiff admitted as much when he alleged in paragraph 46 of his complaint that Warden Strange is liable because the above offenses allegedly perpetrated by other persons occurred "during Stranger's term as Warden". This however is not sufficient to impose liability upon Warden Strange.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, a plaintiff cannot use the doctrine of respondeat superior to establish liability in a § 1983 case. Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989); *Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986); *Ayers vs. Coughlin*, 780 F.2d 205 (2d Cir. 1985); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977); *cert. denied*, 434 U.S. 1087 (1978). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* is not suffice to state a claim under §1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95(1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendant] sufficient to support their liability for wrongful acts," not merely their "linkage in the . . . chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).

6

Moreover, with respect to the claim that Strange retaliated against him by transferring him to Greensville, this is insufficient. He has not alleged any constitutionally protected actions which provided a basis for the alleged retaliation. Virtually any prisoner can assert a retaliation claim for every decision which he dislikes. *Flaherty v. Coughlin*, 713 F.2d 10, 13-14 (2d Cir. 1983). But, in a civil rights lawsuit such as this one, where there is a claim that a state actor retaliated against a plaintiff for exercising a constitutional right, the plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision regarding the plaintiff. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).

In addition even if the action of transferring the plaintiff to Greensville was taken for an improper reason, the action may still be upheld as lawful if it would also have been taken for proper reasons, regardless of any improper motive. *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). Because of both "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," prisoners' claims of retaliation must be examined "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995). Sufficient reasons to justify state action are "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citation omitted).

Furthermore, the fact that the plaintiff did not want to be transferred is irrelevant. A prisoner does not have a right to be at a particular prison. See *Olim v. Wakinekona*, 461 U.S. 238, 248, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state). The transfer of an inmate from one

correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules." *Meachum v. Fano*, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976).

Finally, the plaintiff's claims against Warden Strange for permitting his cell to be searched are also without merit, because inmates do not enjoy the same right to privacy under the Fourth Amendment as non-prisoners. The law is clear that there is no liability against a correctional official for the search of an inmate's cell. *See Hudson v. Palmer,* 468 U.S. 517 (1984) (no right of privacy or to be free from cell searches). A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. *Id.* In *Hudson*, the court held that it is accepted by our society that "[loss] of freedom of choice and privacy are inherent incidents of confinement." *Hudson v. Palmer* at 527-528 *citing Bell v. Wolfish,* 441 U.S., at 537. Therefore, defendant Strange is entitled to summary judgment.

C.   Claim III:   Defendant O'Neil

The claims against defendant O'Neil are also without factual or legal merit. First, the plaintiff's claim in paragraph 48 of the complaint that defendant O'Neil depleted the legal resources in the library by removing the copier, computer and case-base software, are not true. Exhibit D, responses 7((e), (f) & (g). But in any event, the plaintiff has no right to prison library. *Lewis v. Casey,* 518 U.S. 343, 350 (1996). In *Lewis*, the court rejected the claim that there is a right to a library stating, "[b]ecause Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation

8

because of the inadequacy of the prison infirmary. *Bounds v. Smith*, 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977) (requiring prison authorities to provide prisoners with adequate law libraries or legal assistance). In Connecticut, adequate access to courts is provided by persons trained in the law. *See Smith v. Armstrong*, 3:93CV1537(JGM), United States District Court for the District of Connecticut, 968 F. Supp. 40; (D.Conn. 1996 ) (holding that Inmates Legal Assistance to Prisoners meets the Commissioner's obligation to provide access to court). Therefore this claim has no merit.

Likewise, the plaintiff's claim that O'Neil fired him from his prison job as a library assistant also lacks factual and legal merit. Exhibit D, response 7(h). In fact, defendant O'Neil does not even recall the plaintiff ever having a job as a library assistant while he was assigned to MCI, but in any event, he has no right to one. Exhibit D, response 7(h). Indeed, the law is well established that there is no constitutional right to a job in prison. *McNatt v. Parker,* No. 3:96CV1397(AHN)(HBF), 2000 U.S. Dist. LEXIS 20468 (D.Conn. Jan. 18, 2000) *citing Newman v. Alabama*, 559 F.2d 283, 292 (5th Cir. 1977), cert. denied, 438 U.S. 915, 57 L. Ed. 2d 1160, 98 S. Ct. 3144 (1978). In *Santiago v. Commissioner of Correction*, 39 Conn. App. 674, 680, 667 A.2d 304, 307 (1995) the Connecticut Appellate Court stated that "[a] prisoner has no property or liberty interest in prison employment, increased recreation or educational courses. *See Garza v. Miller*, 688 F.2d 480, 485 (7th Cir. 1982), cert. denied, 459 U.S. 1150, 103 S. Ct. 796, 74 L. Ed. 2d 1000 (1983)." *See Manley v. Bronson,* 657 F. Supp. 832, 840 (D.Conn. 1987) (no right to prison job); *See also Barlow v. Lopez,* Civ. No. H85-529(PCD) (D. Conn. June 24, 1985) (a prisoner has no constitutional right to a particular job in a correctional institution); *Banks v. Norton,* 346 F. Supp. 917, 921 (D. Conn. 1972) (same).

Consequently, the plaintiff's claim that defendant O'Neil "influenc[ed] the declassification of the plaintiff as library assistant" or that defendant Strange, as Warden,

"blackballed [the plaintiff] from all jobs in the school/library area of the prison" are without legal merit. Exhibit A, paragraphs 46 & 48, Exhibit C, responses 4(i) & (j); Exhibit D, responses 7(h).

Moreover, even assuming arguendo that the plaintiff had a right to a prison job, which he did not, the plaintiff has not alleged that he was "declassified" or "blackballed" from *all* prison jobs, just jobs in the library area of the prison. The fact that the plaintiff may have been removed from one job does not entitle him to relief when he may have been able to obtain a job of another type in the prison. Furthermore, such a claim is moot, as the plaintiff now has a prison job and is currently earning a reduction towards his sentence every month. Exhibit L, para. 10.

        D.      Claim IV:      Defendants O'Neil, Whidden & Cupka

The plaintiff's claims against defendants O'Neil, Whidden and Cupka that together or individually they interfered with his legal mail, that mail he had addressed to the United States Postal Officer was never received, and that they failed to timely deliver his mail, simply do not rise to the level of a constitutional violation.

The United States Supreme Court has placed strict limitations on denial of access to court claims by inmates against prison officials. *Lewis v. Casey*, 518 U.S. 340, 355 (1996). In order to prove a claim of lack of access to court, a plaintiff must show that he was damaged by the action; that is, that he was unable to litigate and prevail in cases concerning his conditions of confinement or an attack on his sentence. In this case, the plaintiff's claim that an amended complaint was stolen and his mail otherwise "interfered with" is not sufficient. Indeed, if the plaintiff were on mail review, a delay in the delivery of the mail to him would be permissible under the law and in accordance with DOC directives. See Exhibit E, response 5(b). But, even still, defendants O'Neil and Cupka deny handling the plaintiff's mail and defendant Whidden cannot recall if the plaintiff was on mail review. Exhibit D, responses 7(a), (i); Exhibit E,

10

response 5(a); Exhibit H, response(j), (m), (p)-(r). Without proof to the contrary, the plaintiff's claims fail.

At the most, presuming the plaintiff can produce evidence to support his conclusory allegations, the plaintiff could bring an action for negligence before the Connecticut Claims Commissioner. Indeed, if the plaintiff has evidence that his property or mail was lost or incorrectly delayed due to the actions of the defendants, the plaintiff is at most alleging that they were negligent in handling and processing these pieces of mail. But it is well established that a claim of negligence does not state a claim for relief under § 1983. As the United States District Court for the District of Connecticut held in *Dunkley v. Rodwell,* 2004 U.S. Dist. LEXIS 18756 at ** 11-12 (D. Conn. 2004):

> The Supreme Court has found that the *Due Process Clause* is not violated where a prison inmate loses property due to the negligent or intentional actions of correctional officers, if the state provides an adequate post-deprivation compensatory remedy. *Hudson v. Palmer, 468 U.S. 517, 531, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)*; *Parratt v. Taylor, 451 U.S. 527, 543, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981)*. The State of Connecticut provides an adequate remedy for the kind of deprivation that Dunkley [the inmate] sets forth through an application to the Claims Commissioner of the State of Connecticut. See *Conn. Gen. Stat. § 4-141 et seq*. This state remedy is not rendered inadequate simply because the plaintiff anticipates a more favorable remedy under the federal system or that it may take a longer time under the state system before his case is resolved. See *Hudson v. Palmer, 468 U.S. at 535, 82 L. Ed. 2d 393, 104 S. Ct. 3194*. Thus, it is not enough for Dunkley to show that his property was lost or destroyed. He also must show that he has been denied due process of law, i.e., that he was denied an opportunity to attempt to redress this alleged wrong through legal procedures. See *Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 473 (S.D.N.Y. 1998)*.
>
> Dunkley has not presented any evidence suggesting that the opportunity to present his claim to the Claims Commissioner is insufficient to redress his loss. Thus, the court concludes that Dunkley has not been deprived of property without due process of law and his claim lacks an arguable basis in law and fact.

Thus, for the same reasons set forth in *Dunkley*, summary judgment is appropriate for these claims.

11

### E. Claim V: Defendant Serrano

The plaintiff's allegation that defendant Serrano video taped the plaintiff's strip search prior to his transfer to Greensville and then it was viewed by others for entertainment purposes is speculative and incorrect. Indeed, the plaintiff admitted in paragraph 49 of his complaint, that "according to *information and belief of the plaintiff*, the film [of his strip search] has been shown to several persons for recreational purposes." (emphasis added). Exhibit A, para. 49. Putting aside the fact that the plaintiff would have no personal knowledge of what was done with the videotape at MCI after his transfer to Greensville, his allegation is unsupported by any proof. Moreover, defendant Serrano has denied the plaintiff's allegation and affirmed that if the plaintiff were videotaped as he alleges, the tape would have been marked, secured and stored as evidence and thus would not have been available for viewing. Exhibit F, responses 8(b) & (c); Exhibit I. Consequently, defendant Serrano is entitled to summary judgment on this claim.

### F. Claim VI: Defendant Cupka:

Finally, defendant Cupka is entitled to summary judgment on the plaintiff's remaining claims against him, that he failed to respond to his inquiries, "chemically interrogated" the plaintiff, dissemated confidential information about the plaintiff to inmates and staff at Greensville, and denied him good time credit. As with the preceding claims, the plaintiff has no evidence to support these allegations and no evidence of any harm incurred as a result. Without such evidence, his claims do not rise to the level of a state or federal violation.

With respect to the claims that Cupka failed to respond to his inquiries, "chemically interrogated" him, and disseminated confidential information and disinformation to prison officials and staff at Greensville, they are too vague in time and fact to state a claim. Plus, he has not alleged how he was harmed by such alleged conduct. Furthermore, Cupka denies the

plaintiff's allegations. Without evidence to support his claims, Cupka is entitled to summary judgment. Exhibit H, response 9(k), (l), (n).

As to the claim that Cupka denied him good time credit for his prison job in Greensville, the evidence proving this falsehood is found in the affidavit of Robin Nedjoika and Admission responses of Virginia Golemba, who both attest that the plaintiff was awarded good time credit for his job at Greensville. Exhibit L para. 10; Exhibit H, response 9(i). Therefore, for the foregoing reasons, defendant Cupka is entitled to summary judgment on all of the plaintiff's claims.

G. Claim VII: Injunctive Relief Against Cupka

The United States Supreme Court has long held that injunctive relief is "an extraordinary remedy". *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). In order to grant a motion for either a preliminary injunction or a temporary restraining order, a plaintiff must demonstrate:[1]

> [N]ot only that he is likely to suffer irreparable injury if relief is denied, but that there is either (1) a likelihood of success on the merits or (2) a sufficiently serious question going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor.

*Proctor & Gamble Co. v. Cheesborough-Pond's, Inc.*, 747 F.2d 114, 118 (2d Cir. 1984).

A showing of irreparable harm is "an absolute requirement for an award of injunctive relief." *Stewart v. U.S. Immigration and Naturalization Service*, 762 F.2d 193 (2d Cir. 1985). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to justify injunctive relief." *Id.* A plaintiff must establish

---

[1] The legal standard for the granting of a temporary restraining order and a preliminary injunction is the same. *Local 1814, International Longshoreman's Association, AFL-CIO v. New York Shipping Association, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992).

that the alleged threats of irreparable harm are not remote or speculative, but are actual and imminent." *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 775 (2d cir. 1977).

In this case, the plaintiff cannot meet these stringent requirements: he did not demonstrate that he would be irreparably harmed if not granted the injunction, did not demonstrate that he had sufficiently serious questions going to the merits of the case, nor state a likelihood of success on the merits. Furthermore, his request is now moot, since he is no longer housed at Greensville. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona-Shiff*, 702 F.2d 380, 385 (2d Cir. 1983), *quoting Batts v. Bogdanoff*, 2004 U.S. Dist. LEXIS 26344, 3:04CV1191(MRK) (D.Conn. 2004). Other circuit courts agree. *See*, *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999)(noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement are rendered moot by the inmate's release from confinement); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)(holding that inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)(holding that inmate's claim for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit). Although the plaintiff has not been released from prison, he is no longer at the same facility as Cupka and therefore the effect is the same.

Finally, given that the plaintiff's underlying §1983 claims and request for a temporary injunction are the result of alleged exposure to past illegal conduct, this does not in itself constitute a present case or controversy sufficient to meet the requirement for injunctive relief, especially when there is no continuing, present adverse effect now that he is no longer at Greensville. *City of Los Angeles v. Lyons,* 75 L.Ed 2d 675, 676 (1983). Moreover, the plaintiff

14

is not without legal recourse for any alleged past wrongdoing, as he has the underlying §1983 action for money damages from which he can obtain relief if warranted. *Los Angeles v. Lyons*, at 679.  Thus, the plaintiff's request for injunctive relief should be denied.

## II.     THE DEFENDANTS ARE PROTECTED BY QAULIFIED IMMUNITY

In the event the defendants are not entitled to summary judgment one or more of the grounds set forth in the preceding sections, then they are nonetheless entitled to summary judgment due to the protection of qualified immunity.  The doctrine of qualified immunity applies to the defendants in this case because the actions they took, if any, with respect to the plaintiff, were reasonable under the circumstances and in not in violation of any known legal rights of the plaintiff.

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *O'Hagan v. Soto*, 725 F.2d 878, 879 (2d Cir. 1984).  As a general rule, prison officials are entitled to qualified immunity if: (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.  *Oliviera v. Mayer*, 23 F.3d 642, 648 2d Cir. (1994). Immunity ordinarily should be decided by the court.  *Id*. 23 F.3d at 649; *quoting Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

To determine whether a particular right was clearly established at the time defendant acted, a court should consider; whether (1) the right in question was defined with "reasonable specificity"; (2) the decisional law of the Supreme Court and the applicable circuit court support

the existence of the right in question, and (3) under preexisting law, a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), cert. denied, 503 U.S. 961, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Here, the actions of the defendants were reasonable under the circumstances and in accordance with the Department of Correction's Administrative Directives. Any actions they may have taken or not taken were in accordance with the rights and privileges of the plaintiff under the law. However, in the event they were not, they are nevertheless entitled to qualified immunity, as any error would have been reasonable; that is, a reasonably prudent DOC official would have acted in the same manner as the defendants did if faced with the same circumstances. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987).

This second prong of the doctrine of qualified immunity leaves "ample room for mistaken judgments," and protects "all but the plainly incompetent or those who knowingly violate the law." *McCleary v. Navarro*, 504 U.S. at 967, 112 S.Ct. at 2324. Because many situations which confront correctional officials in the course of their duties can be ambiguous, room must be allowed for some mistakes on their part. But, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. *Brinegar v. United States*, 388 U.S. 160, 176 (1940). A correctional official's actions are objectively unreasonable only when no official of reasonable competence would have made the same decision in the same circumstances. *Id.*, 66 F.3d at 420-21.

Therefore, even in the event the actions of one or more of the defendants are deemed to have violated the plaintiff's constitutional rights, which they did not, then they would nevertheless be entitled to the protection of qualified immunity, because their actions or inaction under the circumstances were reasonable. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2nd Cir. 1991); *Baker v. McCollan*, 443 U.S. 146, 99 S.Ct. 2089, 2695 (1979).

Accordingly, summary judgment should be entered on behalf of the defendants on all of the plaintiff's claims.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that their Motion for Summary Judgment be granted in favor of each of the defendants on all of the plaintiff's state and federal claims with prejudice, and the claim for injunctive relief be denied.

.                                            DEFENDANTS
                                             DAVID COSGROVE, ET AL.

                                             RICHARD BLUMENTHAL
                                             ATTORNEY GENERAL


                                     BY:     __/s/_____
                                             Robert B. Fiske, III
                                             Assistant Attorney General
                                             110 Sherman Street
                                             Hartford, CT  06105
                                             Federal Bar #ct17831
                                             E-Mail:  robert.fiske@po.state.ct.us
                                             Tel.:  (860) 808-5450
                                             Fax:  (860) 808-5591


## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this, the 11th day of May, 2006, to:

Mr. William Connelly, #189009
Enfield, CI.
289 Shaker Road, PO Box 1500
Suffield, CT 06080


                                             __/s/_____
                                             Robert B. Fiske, III
                                             Assistant Attorney General