United States District Court
District of Connecticut

William Connelly   : No. 3:00cv720(JCH)(HBF)

v.   :

David Cosgrove, et al.   : July 10, 2006

Plaintiff's Memorandum in Opposition to Motion for Summary Judgment

Statement of the Case.

  This is an action under 42 U.S.C. §§ 1983, 1985 and 1986 filed by a prisoner in the Connecticut Department of Correction. The complaint as to sections 1985 and 1986 has been dismissed sua sponte. The defendants have filed a motion for summary judgement arguing that there is a lack of a genuine issue of material fact and, in the event the defendants did violate the plaintiff's constitutional rights, they are entitled to qualified immunity.

Statement of Facts.

  Claim I: Defendants Golemba/Lantz; ex post facto.

  The plaintiff argues Golemba disregarded the results of a state habeas action wherein the plaintiff claimed (1) that he was entitled to 53 months time served at Whiting Forensic Institute and (2) that he is eligible for early release under the law in effect on November 10, 1989, the date of the crime; see General Statutes section 18-100(e)(1989). There is no longer a dispute over the Whiting time; the dispute is over the early release eligibility date. Neither the 7-day job credit issue nor the maximum nor estimated release date pertain to defendant Golemba. See Connelly v. Warden, CV97-0567686.

The plaintiff's early release eligibility date was originally set at 85% of the 40 year sentence; then was revised to 50% of the sentence pursuant to Public Act 90-261, codified as General Statutes section 54-125a. The downward revision was made after the release of Johnson v. Commissioner, 258 Conn. 804 (2001). Public Act 90-261 took effect October 1, 1990, nearly one year after the crime. The plaintiff claims the controlling statute is section 18-100(e)(1989), which set no minimum percentage and was a CDOC release rather than a parole release by the board of parole.

The original habeas action, Connelly v. Warden, CV97-0567686, was decided on January 10, 2000, Corrigan, J, and the court granted full credit for time served at Whiting. The respondent appealed the trial court's finding that the plaintiff is entitled to full credit for the time served at Whiting, but did not appeal the early release ex post facto claim. The Connecticut Supreme Court upheld the grant of 53 months of actual confinement time and remanded to determine whether the plaintiff's conduct at Whiting warranted monthly good time. Connelly v. Commissioner, 258 Conn. 394 (2001). Upon remand, the trial court again awarded the good time to the plaintiff.

Inasmuch as the respondent did not appeal the early release eligibility claim the plaintiff sent

2

a handwritten memorandum with the habeas court's memorandum of decision attached to defendant O'Neill, asking to be considered for early release under the law in effect on the date of the commission of the crime. Defendant O'Neill delegated to defendant Whidden who delegated to defendant Golemba, and the latter returned the memorandum to the plaintiff with a handwritten note denying the plaintiff's eligibility under the "General Statutes."

The motion for summary judgment understates the ex post facto claim as alleging that defendant Golemba merely miscalculated the plaintiff's early release eligibility date. It is more accurate to state that defendant Golemba disregarded the outcome of the habeas action. The material fact in dispute between the plaintiff and defendant Golemba is the ex post facto early release eligibility date in light of Connelly v. Warden and the respondent's failure to appeal the ex post facto claim.

The Supplemental Complaint accompanying these papers in opposition to summary judgment will name the commissioner of correction as respondent. The ex post facto claim will continue to assert that the plaintiff is eligible for early release consideration as provided by the "statutes, rules, regulations, directives and policies in effect on the date of the commission of the crime, November 10, 1989." Connelly v. Warden, supra.

3

Claim II: Defendant Strange.

Defendant Strange was personally involved in the wrongful acts at many levels. Defendant Strange was the arbiter of Level One grievances per Administrative Directive 9.6, paragraph 15; Thus he was aware of the plaintiff's allegations of a political vendetta in its many manifestations. Additionally defendant Strange was aware of the political vendetta as manifested by the delayed prostate testing when Governor John Rowland referred the plaintiff's letter back to DOC and eventually into the hands of defendant Strange. Rather than rectify the problem, Strange came to the J-2 block of MCI and berated the plaintiff for writing to Governor Rowland. The outburst was witnessed by another inmate. Additionally, a staff member at MCI informed the plaintiff that he was removed from the library job by the "highest authority" in the prison. Upon appointment of counsel, the plaintiff will locate that witness and obtain a statement. The plaintiff also filed a grievance challenging his removal from the library job and defendant Strange was the Level One arbiter who denied the grievance.

Defendant Strange was personally involved in the dispute with the plaintiff regarding the rewriting of the Administrative Directives as Institutional

4

Directives and the removal of some key Administrative
Directives from the MCI library. The plaintiff grieved
the matter to the Unit Administrator, defined as the Warden.
See Administrative Directive 9.6, paragraph 15. To
the best of the plaintiff's recollection, defendant
Strange's signature was on the rewritten Institu-
tional Directives.

The plaintiff had been placed on the wrong transport
manifest prior to his oral argument on direct appeal
in the Appellate Court. Subsequently the plaintiff was
scheduled for oral argument in the state Supreme
Court. This time two habeas petitions were at issue.
See Connelly v. Commissioner of Correction, 258 Conn. 374
(2001); Connelly v. Commissioner of Correction, 258 Conn.
394(2001). About a week before oral argument the
plaintiff sent a memorandum to defendant Strange
notifying defendant Strange that special arrangements had
to be made for transport to the Supreme Court; the plaintiff
supporting the request by describing what happened
at the time of the direct appeal. When the time for
oral argument in the Supreme Court arrived, the plaintiff
was again placed on the wrong transport manifest,
awakened in the middle of the night, kept in a holding
area for more than one hour, and then told to return
to his cell because a mistake had been made regarding

5

the transport manifest. The sleep deprivation hindered the plaintiff's performance in the Supreme Court.

The retaliatory transfer to Virginia occurred after the following sequence of provocative jurisprudential events; the habeas court ruled in favor of the plaintiff's claim for the Whiting time, the respondent failed to appeal the ex post facto early release claim, the plaintiff sent the early release memorandum to defendants O'Neill/Whidden/Colemba, this lawsuit was filed, and the plaintiff became generally more assertive in his responses to the political vendetta; the foregoing implicating the First and Sixth Amendments to the Constitution. MCI prison officials packed all legal materials together with the plaintiff's other property and assured the plaintiff that he would be allowed to retain all property sent with him to Virginia. (Property disallowed, such as a hot pot, was separated at MCI and mailed to a stipulated person on the outside.) Upon the plaintiff's arrival at the Virginia prison he was informed by defendant Cupka that the plaintiff could not retain most of his legal materials. The dispute as to confiscation of legal materials in Virginia was well documented by the attachments to the Amended Complaint dated November 17, 2003 and, therefore, the plaintiff will not include those documents in this response to the motion for summary judgment.

(The plaintiff concedes he lacks evidence to link defendant Strange to documents missing after cell searches.)

6

Claim III: Defendant O'Neill

As a factual matter, the library was listed in defendant O'Neill's portfolio of responsibilities. It is reasonable to infer that defendant O'Neill authorized with the approval of defendant Strange the removal of the copier, computer and Corelcase software, but the plaintiff concedes for the purposes of this lawsuit that Lewis v. Casey and its progeny allowed O'Neill to do so. The plaintiff also concedes that the removal of the law librarian is not a viable claim, but was inexpertly pleaded by the plaintiff as context.

The declassification of the plaintiff as a library assistant so as to chill his freedom of expression and hinder his access to court is a viable claim. Although the original order to declassify the plaintiff came from the "highest authority" (defendant Strange,) O'Neill was charged with proximate authority over the library in the implementation of Strange's policies.

The mailroom was also part of defendant O'Neill's portfolio of responsibilities. When defendant Whidden was brought into monitoring and/or confiscating the plaintiff's mail it is reasonable to infer that defendant O'Neill was in the decisional loop. Defendant Whidden's telephone call to the plaintiff's block unit manager after intercepting the plaintiff's complaint to the U.S.

7

Postal Inspector left her fingerprints on the wrongdoing, but she lacked the authority to act without the knowledge and consent of Strange and O'Neill.

Two years after the librarian had been discharged, defendant O'Neill encountered the plaintiff in the main concourse to remind him of the anniversary.

Despite his denials, as supervisor of the mailroom and library, John O'Neill was fully aware of the daily operations in those two areas.

Claim II. Defendants O'Neill, Whidden and Cupka.

The plaintiff was damaged in many ways by the interference with his legal mail, but it is not necessary to show harm inasmuch as intercepting and confiscating mail as a function of a political vendetta/conspiracy is prohibited by federal law and CDOC Administrative Directives.

Harm is, however, easy to establish. For example, the ex post facto early release claim was first raised in 1997. Because of the actions of defendants O'Neill, Whidden, Bolenba and others, CDOC has yet to acknowledge that the plaintiff is eligible for early release consideration under the early release law in effect on the date of the crime.

The lawsuit sub judice was filed in 2000, but it has not been adjudicated due largely to the actions of defendants O'Neill, Whidden, Cupka and others in state employ.

The Ruling and Order of September 24, 2004 ordered the

plaintiff to submit seven sets of The Second Amended
Complaint together with AO 398s, AO 399s and USM-385s
to the district court. Defendant Whidden had by this time
been promoted to Warden of the Carl Robinson prison
and the plaintiff was transferred to Robinson shortly
after his return from Virginia. Defendant Whidden
showed contempt for the Ruling and Order shown to her
by the plaintiff and blocked the plaintiff's attempts
to have photocopies made. Not until the plaintiff was
transferred from Robinson to Enfield was he able
to make the copies. This is part of a relentless effort
to hinder the plaintiff's attempts to prosecute this
action.

The defendants' vague, incomplete and evasive responses
to discovery requests serve to mask their extensive
and coordinated wrongful acts. The inadequate responses
to discovery requests should mitigate against summary
judgment.

The plaintiff has frequently queried prison officials as
to whether he is on mail review status; the queries have
either gone unanswered or prison officials have denied
the plaintiff is on mail review. The information regarding
mail review is accessible to the defendants, but they
refused to comply with discovery except to state that
they cannot recall whether the plaintiff was on mail review.

9

Nota bene: Mail review applies to general correspondence only and the inmate must be notified, if any piece of mail is confiscated. CDOC Admin. Dir. 10.7(4)(E)(1)(2). Outgoing privileged correspondence may not be opened, read, delayed or confiscated. CDOC Admin. Dir. 10.7(4)(I). Incoming privileged correspondence can be opened only in the presence of the inmate, to be inspected for contraband, but not read. CDOC Admin. Dir. 10.7(4)(J). The defendants' reference to mail review is an irrelevant evasion of discovery requests. See defendants' Exhibit V, CDOC Admin. Dir. 10.7.

Claim II: Defendant Serrano.
Defendant Serrano failed to comply with the plaintiff's discovery requests, which failure is sufficient to defeat his motion for summary judgment. If, as defendant Serrano states, the tape would have been marked, secured and stored as evidence, it would not be present in the plaintiff's personal file to the extent that file is available to the plaintiff. Defendant Serrano refused to produce the tape or state that the tape does not exist. Defendant Serrano failed to produce documents confirming or disconfirming whether such videotaping was standard operating procedure when transferring inmates to Virginia. Defendant Serrano refused to answer discovery inquiries as to the frequency of such taping. Defendant Serrano, not the plaintiff, has custody and control of the tape as a CDOC employee. The harm to the plaintiff is in the invasion of

privacy and attempt to humiliate so as to discourage the plaintiff from exercising his rights under the First and Sixth Amendments.

Defendant Serrano presumably complied with the chain of custody requirements of CDOC Admin. Dir. 6.9. See defendants' Exhibit I. Defendant Serrano is not entitled to summary judgment because of his refusal to comply with essential discovery requests.

Claim VI: Defendant Cupka.

(a) Defendant Cupka does not rebut the allegation that he was responsible for the confiscation of approximately 85% of the plaintiff's legal materials, including, inter alia, statutes, rules of court, case law and evidence of administrative exhaustion. All of these legal materials had been packed by prison officials in Connecticut and sent with the plaintiff to Virginia. The papers included much evidence that would be helpful to the plaintiff in this action and others. Progress in litigation has been delayed, evidence has gone stale and documents have disappeared. The plaintiff's ex post facto early release claim has been stalled for years. Whether relief is found in money damages or declaratory or injunctive relief, delays of several years are harmful to the plaintiff. Depriving the plaintiff of useful litigational tools harms the plaintiff's ability to litigate effectively. See attachments to Second Amended Complaint, dated 11-17-03.

(b) Defendant Cupka hindered the plaintiff's access to

11

Inmates' Legal Assistance and other lawyers. A conspiracy to prolong the plaintiff's claims for money damages and equitable relief is harmful on its face.

(c) Defendant Cupka's repeated denial of 7-day Job Credit Good Time is well-documented. Additional documentation would be available if the plaintiff's appeal to the Commissioner was not rerouted to Counselor Supervisor Dudley at the District Administrator's Office. The rerouted grievance elicited no response. Discovery requests yielded nothing but denials. The persistent denial of routine credit for 7-day employment is harmful in that it operates to chill the plaintiff's freedom of expression: incrementally. To the extent that not all the good time was restored, defendant Cupka's actions extend the total effective period of incarceration.

(d) Defendant Cupka stigmatized the plaintiff by labelling him "paranoid delusional" and referring him to the Greens-ville mental health unit. The plaintiff is harmed in that his credibility and competence are impeached, his chance of early release is diminished and his freedom of expression is chilled.

(e) The plaintiff does not claim defendant Cupka chemically interrogated him; rather that the plaintiff was chemically interrogated at Greensville and queried about matters having little or nothing to do with VDOC. Chemical interrogation constitutes assault/battery and invasion of privacy. Any

12

chemical interrogation is a physically and mentally harmful act. The plaintiff may reveal potential allies and witnesses, making them susceptible to being neutralized. The plaintiff may reveal legal strategy. The harmful possibilities are endless.

Claim VII. Defendant Cupka.

The mail violations claim asking injunctive relief against Cupka is moot. The factual evidence attached to the motion for injunctive relief is, however, relevant to the claims for money damages and the ex post facto early release claim. Cupka and the plaintiff are no longer at the same prison and Cupka is presumably not in a position to intercept the plaintiff's mail.

Section headings Claim I-VII of this memorandum correspond to the claims as framed by the defendants' memorandum of law in support of summary judgment. The plaintiff does not accept the framing of the issues by the defendants, but uses this method of presenting the facts in a coherent manner from the perspective of the plaintiff. The plaintiff does not understand the reference to a Rule 9(c) Statement of Facts on page 2 of the defendants' memorandum of law. The plaintiff received no Rule 9(c) Statement of Facts. The plaintiff did receive a Local Rule 56(a)(1) Statement of Facts. The plaintiff relies primarily on his Local Rule 56(a)2 Statement and the Appendix to the plaintiff's memorandum of law together with the Appendix to the Second Amended Complaint to rebut the facts as presented by the defendants.

Claim VIII : Qualified immunity.

The plaintiff's evidence in the appendizes to the Amended Complaint dated 11-17-03, motion for injunction of 8/1/02 and the Rule 56(a) 2 Statement is sufficient to defeat the claim of qualified immunity. The claim in the Supplemental Complaint is not for money damages and, therefore, qualified immunity does not apply.

# ARGUMENT

## I. There are genuine issues of material fact that preclude summary judgment for the defendants.

Summary judgment is to be granted only if the record before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. A material fact is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The plaintiff's affidavit and his statement of disputed issues contradict the defendants in each material fact alleging wrongdoing. The defendants' Local Rule 56(a)1 Statement and the plaintiff's 56(a)2 Statement agree on paragraphs 1, 2, 3, 4, 5, 6, 7, 19, 20 and 22 only.

14

A party moving for summary judgment has the burden of
showing the absence of a genuine issue as to any material
fact and the evidence must be viewed in a light favorable
to the opposing party. Adickes v. Kress and Co., 398 U.S. 144,
158-59 (1970). Rule 56(e) of the Federal Rules of Civil
Procedure, which provides that on a properly supported
motion for summary judgment an adverse party may not
rest on his pleading but must set forth specific facts showing
a genuine issue for trial, is not intended to modify the
movant's burden under Rule 56(c) to show initially
the absence of a genuine issue of material fact. Id.
at 159-60. A conclusory assertion that the nonmoving
party has no evidence is insufficient. Anderson, supra,
at 328 (White, J., concurring). In the case sub judice,
the defendants have fallen short of meeting the
burden necessary for summary judgment.

II. The defendants failed to foreclose the possibility
    of an understanding among the alleged conspirators.

Involvement of a state official in a conspiracy to deny
constitutional rights of any person provides state action
essential to show a section 1983 violation, whether or
not the actions of the state official were authorized or
lawful. Adickes, supra, 152. On a defendant's motion
for summary judgment in an action alleging conspiracy

such defendant does not meet the burden of showing the absence of any genuine issue of material fact where such defendant fails to foreclose the possibility of an understanding among the conspirators. Id. at 15-7. Defendants Strange, O'Neill, Colemba, Whidden, Serrano and Cupka have merely denied knowledge of the political vendetta/conspiracy.

III. The defendants are not entitled to qualified immunity because their conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known.

Qualified immunity applies to officials sued in their individual capacities for money damages. P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir. 1990). Immunity is a question for the court, not the jury, and qualified immunity decisions should be made as soon as possible. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiem); Saucier v. Katz, 533 U.S. 194, 200 (2001).

Qualified immunity generally applies to functions such as those performed by prison officials. Cleavinger v. Saxner, 474 U.S. 193, 206-07 (1985). Prison officials are not, however, entitled to qualified immunity when their conduct violates clearly established federal law, and prison officials are presumed to be aware of the law governing their conduct. Crawford-El v. Britton, 523 U.S. 574, 590-91 (1988).

16

In this case qualified immunity turns on issues of fact rather than issues of law; i.e., the defendant's Local Rule 56(a)1 Statement plus appendices and the plaintiff's Rule 56(a)2 Statement plus appendices are in conflict on several genuine issues of material fact, and the wrongful acts of the defendants violate clearly established federal law. See Locurto v. Safir, 264 F.3d 123, 132 (2d Cir. 2001).

At its core this action is a First Amendment claim, and each defendant has violated the plaintiff's rights under the First Amendment. The First Amendment is not concerned with preventing physical abuse by government agents, but rather with the realm of intellect and spirit. West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943). It was not the purpose of PLRA to insulate from review all claims in which legitimate constitutional issues are raised in the absence of physical harm. Section 1983 is not itself a source of substantive rights, but rather it is a means of vindicating federal rights established elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994); Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000). The right to complain about prison officials and to seek administrative and/or judicial relief from their actions is protected by the First Amendment. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988).

In an action complaining of First Amendment violations, harassment and conspiracy, the Second Circuit has ruled that summary judgment must be used selectively to avoid trial by affidavit. Donahue v. Windsor Locks Bd. of Fire Comrs. 834 F. 2d 54, 58 (2d Cir. 1987). The unifying thread of the wrongful acts of defendants Strange, O'Neill, Golemba, Whidden, Serrano and Cupka is the political vendetta/conspiracy, using the plaintiff as a scapegoat, and the cover up thereof, deriving from ideological intolerance.

The Constitution guarantees prisoners the right of access to courts. Bounds v. Smith, 430 U.S. 817, 824, 828 (1977). Lewis v. Casey, 578 U.S. 343 (1996), substantially diminished prisoners' right of access to court, but Lewis v. Casey did not authorize the defendants to intentionally hinder the plaintiff's access to court by intercepting incoming and outgoing mail, pilfering documents from the plaintiff's files, ignoring the Administrative Directives, confiscating the plaintiff's legal materials, denying access to forms already stored in the library, denying access to privileged calls to attorneys, denying access to the CT/UA Correctional Services Contract and generally harassing the plaintiff when he is being litigiously aggressive. Defendants Strange, O'Neill, Whidden and Cupka violated clearly established federal

law in the foregoing ways. Prisoners must demonstrate
actual injury resulting from a denial of access to court
in order to allege a constitutional violation. Lewis, supra,
at 349. Plaintiff Connelly raised the ex post facto early
release eligibility claim in 1997 and CDOC has yet
to acknowledge his right to be considered for early
release under the law in effect on the date of
the crime. The action herein was filed in April of 2000
and has not gone to trial. The delays in themselves
are harmful; additionally, successful obstructionism
emboldens the wrongdoers by enhancing their
collective sense that they are above the law.
A prisoner's right of access to court may not be
denied or obstructed. Johnson v. Avery, 393 U.S. 483,
485 (1969). In the absence of a legitimate
administrative concern a prisoner may not be
hindered from gaining access to the judicial
process. Wolff v. McDonnell, 418 U.S. 539, 578-80
(1974). A prisoner may state a claim for denial
of access to courts by alleging misconduct by
prison officials. Cranford-El, supra, 584. Prison
officials cannot intentionally take away a prisoner's
legal research or legal documents. Morello v. James,
810 F. 2d 344, 347 (2d Cir. 1987); Steinberg v. Taylor,
500 F. Supp. 477, 480 (D. Conn. 1980).

The defendants violated the plaintiff's clearly established right to equal protection derived from the Fourteenth Amendment. The plaintiff has been singled out for unequal treatment by virtue of libertarian GOP political opinions and prior peripheral political affiliations. Unequal treatment is permissible only if the practices bear a rational relation to a legitimate penal interest. <u>Lee v. Washington</u>, 390 U.S. 333, 333-34 (1968). To prevail on an equal protection claim, an inmate must prove: (1) that similarly situated inmates have been treated differently by the government and (2) that there is no rational relation between the dissimilar treatment and any legitimate penal interest. Id. There is no valid penological interest being served by scapegoating the plaintiff due to the political biasses and frustrations of prison officials. Other inmates were allowed to return all legal materials sent with them from Connecticut; other inmates performing the trash job in the same manner as the plaintiff were given full credit; other inmates pursuing habeas corpus remedies were unimpeded. There is no legitimate rational relation for the dissimilar treatment.

20

Prisoners retain limited Fourth Amendment rights related to searches, seizures and personal privacy. U.S. v. Cohen, 796 F. 2d 20, 22-24 (2d Cir. 1986); Bell v. Wolfish, 441 U.S. 520, 559-60 (1969). A Fourth Amendment claim is stated where an inmate has a right to be free from strip search absent reasonable suspicion that prisoner is carrying contraband or weapons. Shain v. Ellison, 273 F.3d 56, 65-66 (2d Cir. 2001); Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002). The video of Serrano and the chemical interrogation on the watches of Strange (at Macdougall) and Gupta (at Greensville) are violations of clearly established Fourth Amendment rights, and violations of clearly established state laws.

The plaintiff has made state law claims for assault, defamation and invasion of privacy. The district court may exercise jurisdiction because the claims do not raise novel or complex issues of state law, the state claims do not predominate over claims of which the district court has original jurisdiction and the district court has not dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c). The plaintiff's 56(e)2 Statement with appendices amply supports the claims of assault (chemical interrogation), defamation (labelling plaintiff paranoid delusional) and invasion of privacy

21

(pre-transfer video, chemical interrogation, intercepting mail). The foregoing are violations of clearly established law.

It is well-established that the Ex Post Facto Clause of the United States Constitution requires prison officials to apply early release law in effect on the date of the commission of the crime. Defendant Golemba was employed by the Department of Correction when nonparole releases under section 18-100(e) were commonplace and she was instructed by the habeas court's memorandum of decision and informed by the plaintiff's memorandum of application, yet she refused to consider the plaintiff's eligibility except under statutes effective after the date of the crime. Subsequently, the Governor, Commissioner and Interstate Compact Office administrator refused to apply the law in effect on the date of the crime. The plaintiff is relying on clearly established federal law.

Conclusion.

The plaintiff's Local Rule 56(a)2 Statement — with a list of Disputed Issues of Material Fact and Exhibits including the plaintiff's affidavit — shows that there are numerous genuine issues of

material fact in dispute and there are numerous
violations of clearly established constitutional
law of which the defendants should have known.
The supplemental complaint requests equitable
relief and, therefore, qualified immunity does not
apply to that claim.

For the foregoing reasons, the defendants'
motion for summary judgment should be
denied.

Respectfully submitted,

William Connelly
#189009
Enfield Correctional Institution
289 Shaker Road
Enfield, CT 06082.

10/3/06

Certification.

This is to certify that a copy of this memorandum
in opposition to summary judgment was mailed
to Robert B. Fiske III, Assistant Attorney General,
110 Sherman Street, Hartford, CT 06105; tel:
(860) 808-5450; on July 10, 2006

William Connelly

10/3/06

23