Connelly
v. Cosgrove, et al.

No. 3:00cv720(JCH)(HBF)

U.S. District Court

FILED

2006 OCT -5 P 4: 20

## Disputed Issues of Material Fact

In support of his Local Rule 56(a)2 Statement, the plaintiff submits this list of each material fact as to which it is contended there is a genuine issue to be tried.

1. Whether defendant Golemba disregarded the results of a successful state habeas claim that the plaintiff is eligible for early release consideration under the law in effect on the date of the commission of the crime, November 10, 1989; i.e., General Statutes section 18-100(e)(1989).

2. Whether defendant Golemba, prior to the reinstatement of parole on October 1, 1990, routinely processed inmate releases pursuant to section 18-100(e).

3. Whether the beginning date of enhanced monthly statutory good time should be September 1, 1993, as the plaintiff contends, or February 1, 1998, as reflected by the plaintiff's timesheet.

4. Whether the issues raised in paragraphs 1 and 3 may be properly brought under 42 U.S.C. § 1983 in the federal district court.

5. Whether defendant Strange, as the Level One arbiter of grievances, was aware of the plaintiff's frequent grievances and internal complaints.

6. Whether defendant Strange knew or should have known the plaintiff was the target of a political vendetta.

7. Whether defendant Strange was aware of the letter the plaintiff sent to Governor John Rowland and castigated the

plaintiff for sending the letter.

8. Whether defendant Strange was aware the plaintiff's visitors had been delayed and/or prevented from visiting.

9. Whether defendant Strange was aware the plaintiff was declassified from his library assistant job and whether defendant Strange influenced or ordered the declassification in retaliation for the plaintiff's expression of opinion, litigating and aiding other inmates in their lawsuits against Macdougall and CDOC.

10. Whether defendant Strange participated in rewriting Administrative Directives as Institutional Directives and removed the Administrative Directives from the library.

11. Whether defendant Strange was aware the plaintiff was being placed on the wrong transport manifests and either failed to remedy the problem or actively encouraged it.

12. Whether defendant Strange was responsible for the retaliatory transfer of the plaintiff to Virginia.

13. Whether the plaintiff was assured he could retain the property sent with him to Virginia, especially his legal materials.

14. Whether the Interstate Correctional Services contract between Connecticut and Virginia provided that transferred Connecticut inmates could retain all legal materials sent with them to Virginia. (Note: Reference here is <u>not</u> to the generic Interstate Corrections Compact, Chapter 327 of the Connecticut General Statutes.)

2

14. Whether the Interstate Corrections Compact, Chapter 327 of the Connecticut General Statutes, sec. 18-105 et sequentia, provides that confinement in a receiving state shall not deprive any inmate of any legal rights which he would have if confined in the sending state.

15. Whether the Interstate Corrections Compact, Chapter 327 of the Connecticut General Statutes, sec. 18-105 et sequentia, provides that any inmate confined pursuant to the terms of the compact shall have any and all rights and derive any benefits in any action or proceeding in which he could have participated if confined in the sending state.

16. Whether the cumulative actions of defendant Strange and his subordinates served to delay the plaintiff's litigation for several years.

17. Whether defendant O'Neill, as supervisor of the library, was involved in the decision to declassify the plaintiff so as to chill the plaintiff's speech and hinder his access to court.

18. Whether defendant O'Neill, as supervisor of the mailroom, was in any way responsible for confiscating and/or delaying the plaintiff's mail, privileged or general, incoming or outgoing.

19. Whether defendant O'Neill, in tandem with defendant Strange, rewrote Administrative Directives as Institutional Directives and removed Administrative Directives from the library.

20. Whether the plaintiff was on mail review status.

21. Whether mail review applies to privileged correspondence.

3

22. Whether defendant O'Neill knew of the plaintiff's allegations that the plaintiff was the target of a political vendetta.

23. Whether defendant O'Neill participated in or acquiesced in the political vendetta.

24. Whether defendant Serrano filmed the plaintiff naked in a cold room prior to the latter's transfer to Virginia.

25. Whether such filming was standard operating procedure and was performed on each inmate transferred to Virginia.

26. Whether defendant Serrano filmed the plaintiff as an expression of political hostility and then used the film for recreational purposes.

27. Whether defendant Serrano was aware of the political vendetta and participated in it.

28. Whether defendant Whidden intercepted a mail complaint from the plaintiff to the U.S. Postal Inspector on Weston Street in Hartford, then ordered the plaintiff's Unit Manager to interrogate the plaintiff about the matter.

29. Whether defendant Whidden prevented the complaint from reaching the Postal Inspector.

30. Whether defendant Whidden intercepted/read/delayed/confiscated any other mail of the plaintiff — incoming or outgoing, privileged or general.

31. Whether defendant Whidden knew or should have known that mail review does not apply to privileged correspondence.

32. Whether defendant Whidden was aware of the political vendetta and participated in it.

33. Whether defendant Whidden acted to delay the plaintiff's litigation.

34. Whether defendant Cupka was in the decisional loop which resulted in the confiscation of approximately 85% of the plaintiff's legal materials upon the plaintiff's arrival in Virginia.

35. Whether confiscation of the plaintiff's legal materials was planned prior to the plaintiff's transfer to Virginia.

36. Whether the plaintiff was informed by CDOC prison officials that he would be able to retain all property, especially and including legal materials, sent with him to Virginia.

37. Whether the CT/VA Correctional Services contract in existence on the date of the plaintiff's transfer (2-14-01) provided that each Connecticut inmate be allowed to retain all legal materials brought with him to Virginia.

38. Whether defendant Cupka encouraged VDOC officials to confiscate the plaintiff's legal materials.

39. Whether defendant Cupka told Virginia prison officials that the plaintiff was wrong when the plaintiff stated he had been told by CDOC prison officials, before being transported to Virginia, that each inmate would be allowed to retain all legal materials sent with him to Virginia.

40. Whether the plaintiff was described as "delusional" and referred to the Greensville mental health unit by defendant Cupka.

5

41. Whether the mental health referral by defendant Cupka was intended to discredit the plaintiff's allegations and cover up the wrongdoing of defendant Cupka and CDOC.

42. Whether defendant Cupka hindered the plaintiff's access to telephone contact with the Public Defender Habeas Unit in violation of the CT/VA Correctional Services contract and federal constitutional law.

43. Whether defendant Cupka hindered the plaintiff's access to telephone contact with the Inmates' Legal Assistance Program in violation of the CT/VA Correctional Services contract and federal constitutional law.

44. Whether the plaintiff was chemically interrogated at Greensville with the knowledge and consent of defendant Cupka.

45. Whether the plaintiff was chemically interrogated at Macdougall with the knowledge and consent of Warden Strange.

46. Whether defendant Cupka was aware of and participated in and covered up the political vendetta.

47. Whether defendant Cupka allowed some of the plaintiff's mail to be routed through him by VDOC personnel.

48. Whether defendant Cupka authorized and encouraged VDOC personnel to intercept, delay and/or confiscate the plaintiff's legal mail at key junctures.

49. Whether defendant Cupka delayed or confiscated documents in support of the plaintiff's ex post facto early release claim.

50. Whether defendant Cupka delayed or confiscated documents in support of the plaintiff's claims under 42 U.S.C. § 1985.

51. Whether defendant Cupka repeatedly denied to the plaintiff 7-day job credit good time.

52. Whether defendant Cupka encouraged inmates to steal legal documents from the plaintiff's files.

53. Whether defendant Cupka encouraged inmates to steal other property of the plaintiff.

54. Whether defendant Cupka encouraged enmity toward the plaintiff by telling other inmates that the plaintiff's litigation was contrary to the best interest of other inmates.

55. Whether defendant Cupka removed all phone numbers from the plaintiff's PIN list, or authorized such.

56. Whether the foregoing wrongful acts are part of a mosaic of political vendetta/conspiracy rather than discrete acts.

Wm C
10/3/06

Wm C
William Connelly

Sworn to and Subscribed before me
16th day of June 2006

My Commission Expires 7/31/06

7