United States District Court
District of Connecticut

United States District Court
District of Connecticut
FILED AT        BRIDG[E]
9/12/07
Kevin F. Rowe,
By _____ Deputy Clerk

William Connelly  :  No. 3:00CV720(JCH)

v.  :

Theresa Lantz  :  September 6, 2007

Local Rule 56(a)(2) Statement

Pursuant to Local Rule 56(a)(2), the plaintiff submits this statement of facts as to which he contends there are several genuine issues of material fact in dispute.

Paragraph 1. Admit

2. Admit

3. Community release pursuant to §18-100(e) began in 1998 (PA 98-92) and continues to this day. Π's Exhs A, B, C, D. Community release consisted primarily of release to an approved community residence (including but not limited to a private home) or placement in a halfway house; profit or nonprofit; private or public. Labelling release based on the General Statutes as a mere "program" is misleading. Release pursuant to

§18-100(e) is qualitatively different from programs; e.g., Calisthenics, Drug Awareness, Safe Sex. To refuse to apply a less onerous release scheme in effect on the date of the crime is violative of the ex post facto clause.

4. The plaintiff disputes the statement that eligibility criteria "must" be met. Mr. Levesque makes no reference to General Statutes or Administrative Directives. Eligibility is determined by General Statute, secondly by Administrative Directive. Any other apparatus must be properly promulgated and formatted. Furthermore, Mr. Levesque is failing to fully account for the common practice of override. Tropp 5(a)(3) State, π's Exh G; π's Exh F at 40-41, Apx 1 at 2.

5.(a) The controlling statute and classification directive do not limit release to inmates within 30 months of E.R.D. π's Exhs A, D, K.

(b) OCM 1989 lacks authenticity. Not only does the OCM 1989 submitted by the defense not resemble an official document, it fails to meet the requirements of AD's, Administrative Directives, Manuals, Forms Manuals, and Post Orders. π's Exh E, Sections 3,4,5,6,7, 19 and 20.

(c) If, arguendo, OCM 1989 were deemed by the Court to be valid, it provides for an override of the overall risk score without reference to any specific criterion. The plaintiff, therefore, is eligible

for an override from Level 3 to Level 1 without regard for the 30-month-to-ERD or any other criterion. π's Exh F, pages 40-41; Appendix 1, page 2. (d) Empirical data suggest the criteria listed in ∆'s Exh E were not unshakeable obstacles to release. E.g., out of 10 inmates whose files were individually examined, 70% were released despite failing to meet one or more of the DOC criteria in ∆'s Exh E, according to an affidavit by Attorney Jonathan E. Tropp. Furthermore, it appears that one other released inmate, Steven Asherman, served only 63 months in prison, including good time, on a sentence with a maximum of 14 years. π's Exh G. Note: ERD does not apply to a mandatory minimum.

6. Admit.

7. Admit.

8. Admit.

9. The plaintiff admits in part and denies in part. PA 90-261 went beyond merely reinstating parole for definite sentences. PA 90-261 also amended §18-7a(c) and related statutes

3

pertaining to nonparole release to the community. π's Exh C; π's Ex. G. The minimum to be served under §18-100(e) progressed from no percentage stipulated to 10% to 25% to 40%. The 25% and 40% standards were set by PA 90-261. PA 90-261 did not provide that an inmate applying for §18-100(e) nonparole release be within 30 to 36 months of ERD. π's Exhs A, B, C. There is no indication the legislature intended nonparole release under §18-100(e) and parole release under §54-125a to be mutually exclusive. π's Exh C, D; Lee Aff., Table A. The clear legislative intent was to have two coexisting schemes for release. π's Exh C, D; Lee Aff. 18-100(e) was not repealed and has been expanded. π's Exh D.

10. AD 9.2, effective March 25, 1991, superseded AD 1.6, Classification Policy-Long Term. Exh B, J, H. AD 1.6 set no end-of-term release limits on community release. The plaintiff admits the 1991 AD 9.2 set a guideline of 36 months to -EDD, but AD 9.2 of 1991 also provided for override of the overall of each and a blanket authorization for the Commissioner to make an exception to any of the provisions of AD 9.2. π's Ex. H. AD 1.6 is controlling. The formatting of AD 9.2 1991 casts doubt on the authenticity of π's Exh E.

4

11. It is unclear which of the documents is being referenced here. There is no reference to the controlling statute (§18-100(e)(1989)) and to the appropriate Administrative Directive (AD 1.6), which set no time limits to release except that the statutory mandatory minimum for the offense must be served. π's Exh A, B. Some empirical data rebut paragraph 11 of the defendant's Statement of Facts. π's Exh G; Lee Aff. The defense is relying on the recollections of a person who was a psychiatric treatment worker at the time of the offense. Levesque Depo at 30.

12. Classification reviews must be performed at least annually. π's Exh B, Pg 1. One of the matters to be discussed is community release. π's Exh B, Pg 2. An inmate may request review of any aspect of classification. π's Exh B, Pg 3. In the instant case, the plaintiff applied for release pursuant to §18-100(e) twice and was told by Ms. Golemba and Ms. Milling that he was barred by statute. π's Exh L; Δ's Exh I.

13. Denied. (Tropp Aff. Exhs A-J; Levesque Depo. at 34-35.) Δ failed to provide data as requested; limited data to electronically retrievable.

5

14. Conclusory. Statement fails to consider ex post facto implications. See U.S. Const., Art 1, Sec. 10; π's Exh D.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit in part, deny in part. The state lacked authority to eliminate the statutory authority for early release as to retroactive application where it would be more onerous to the offender. Mr. Levesque's Affidavit is conclusory. He presents insufficient data regarding release of inmates under § 18-100(e) circa 1989. Section 18-100(e)(1989) coexisted with section 54-125a, and they coexist to this day. The plaintiff admits that he was in 1995 sentenced to a definite term of 40 years and that he will be parole eligible as of November of 2009. Parole eligibility does not affect eligibility under § 18-100(e)(1989). π's Exh A, B, C, D; U.S. Const., Art. 1, Sec. 10.

6

21. Admit.

22. Deny. The plaintiff's earliest parole eligibility date is at 50% of his sentence or November of 2009, as mandated by §54-125a. The Board of Pardons and Paroles has the discretion to deny or grant the plaintiff's application, but the Board does not determine the date the plaintiff becomes eligible for consideration. Section 54-125a sets that date at 50% of the sentence.

23. The plaintiff admits that the Board of Pardons and Paroles is the primary decision maker and release authority where an inmate applies for pardon or parole. The Board has no decision making or release authority over the nonparole early release scheme pursuant to §18-100(e)(1989). П's Exhs A, B, C.

24. Nonparole release pursuant to §18-100(e)(1989) and parole release pursuant to §54-125a are separate and discrete determinations. The Board of Pardons and Paroles has no authority under §18-100(e)(1989). The reference to 18 months has no basis in the laws in effect on the date of the crime. Paragraph 24 is inconsistent with paragraphs 5, 10, 11 and 13. See П's Exhs: A, B, C.

25. Admit. The plaintiff admits he is eligible for parole in November of 2009.

Respectfully submitted

William Connelly
#189009
Enfield C.I.
289 Shaker Road
Enfield, CT 06082

<u>Certification.</u>

I certify that a copy of this Local Rule 56(a)(2) Statement was mailed to Steven R. Strom and Robert B. Fiske, Assistant Attorneys General, 110 Sherman Street, Hartford, CT 06105; tel:(860)808-5400; fax:(860)808-5591.

Date: 9-6-07

William Connelly
#189009
Enfield C.I.
289 Shaker Road
Enfield, CT 06082