United States District Court
District of Connecticut

FILED
2007 NOV 16  P 2: 15

William Connelly       : No. 3:00CV720(JCH)
                       :
v.                     :
Theresa Lantz          : November 12, 2007

## Motion Pursuant to Rule 59(e)

The plaintiff, William Connelly, moves the Court to reconsider and vacate its grant of summary judgment dated November 2, 2007, postmarked November 6, and tendered to the plaintiff on November 7. The plaintiff submits the Rule 59(e) ten day response time ought to begin on November 7.

## Standard of Review

Rule 59(e) provides an efficient mechanism by which a trial court judge can correct an otherwise erroneous judgment without implicating the appellate process and enables the trial judge to reconsider the validity of the judgment and to vacate or alter the judgment. Fed. R. Civ. Proc. 59(e).

In the absence of a specific designation of a provision of the Federal Rules of Civil Procedure

Oral Argument Requested

under which the motion to vacate the judgment is filed, the motion may be treated as filed pursuant to Rule 59(e). Foman v. Davis, 371 U.S. 178, 180-81 (1962). The District Court is justified in reconsidering its previous ruling if there is an intervening change in controlling law, new evidence not previously available comes to light, or it becomes necessary to remedy a clear error of law or prevent manifest injustice. Rodick v. City of Schenectady, 155 FRD 29, 31 (NDNY 1994); Oxford House v. City of Albany, 155 FRD 409, 410 (NDNY 1994). Rule 59(e) allows a party to bring the court's attention to matters which a party believes the court has overlooked, rather than to introduce new evidence or arguments. Vulcan Iron Works, Inc. v. Polish American Machinery Corp., 479 F. Supp. 1060, 1062 (SDNY 1979).

## Argument

### I. In General.

At the outset, the plaintiff will express the significant risk of increased punishment starkly. See Garner v. Jones, 529 U.S. 244, 254 (2000) (where state Board of Pardon and Parole rules, not statutes, were applied retroactively and were deemed susceptible to ex post facto analysis. The plaintiff has been claiming he is currently eligible for release to a

private residence or halfway house under §18-100(e)(1989), A.D. 1.6 and, if authentic, the 1989 manual. The defendant claims the plaintiff will not be eligible for early release to a private residence or halfway house until November 13, 2009 at the earliest, under the parole scheme; and the defendant claims the plaintiff will not be eligible for nonparole release until 2017 minus 18 months. The difference in risk of increased punishment under the parole scheme is at least two years. The difference under the nonparole scheme, section 18-100(e)(2007) and A.D. 9.2 (2006), is approximately 8 years.

II. Defendant's Reply brief, §54-125h; override; errors.
    The defendant's Reply brief dated 9-25-07 is a compendium of smoke, mirrors and misrepresentation of statutes and directives. Following are samples sufficient to persuade the Court to grant this 59(e) motion:
    (a) The defendant claims on page 3 of the Reply brief that Conn. Gen. Stat. §54-125h would allow DOC to release the plaintiff to the community on "transfer parole" 18 months prior to the 50% date, or May 13, 2008. This is a blatant falsehood which is inconsistent with §54-125a, the 50% parole eligibility statute. It is also inconsistent with the defendant's original brief, the affidavits attached to the brief, and the Classification Reviews attached to the plaintiff's brief,

3

all of which postdated P.A. 04-234. See Δ's Exh C, D, H, I. Also see π's Exh I. The plaintiff is not eligible for parole until November 15, 2009. Section 54-125h would come into play if, e.g., the plaintiff were granted in November of 2009 a voted to parole date of November 15, 2011. Section 54-125h would authorize the Commissioner to release the plaintiff to the community on or after May 15, 2010. There is no basis for the assertion that §54-125h provides for transfer parole for the plaintiff on May 15, 2008; that was just a ploy to salvage the motion for summary judgment.

(b) On page 4 of the Reply brief, the defendant appears to concede that the 36 to end of sentence criterion may be overridden and, therefore, there is not a disputed issue of material fact. Footnote 5, however, notes that the current A.D. 9.2 prohibits override to Level One (community release). In 1989 there was one controlling statute, (18-100(e)(1989)); π's Exh A. The controlling administrative directive was A.D. 1.6; π's Exh B. If the Court deems it authentic, the 1989 classification manual offered suggestions or guidelines informing the execution of §18-100(e)(1989) and A.D.1.6. See π's Exh F, pages 40-41, Appendix, page 2. Page 29 of the 1989 manual is also referenced in the Levesque

deposition at page 33.

The 1989 manual sets a guideline, not a requirement, of 30 months to end of sentence for community release. That guideline and the other criteria can be overridden by an override of the overall risk score without regard to individual criteria. See π's Ex 2 F; Lantz depo at page 28; Levesque depo at page 34. Commissioner Lantz testifies in her deposition that override applies to a specific inmate's overall risk score without regard to individual criteria. Pg. 28.

The 1989 manual allows the Commissioner or her designee to override to Level One, community release.

The 1989 manual does not prohibit more than one override per sentence; does not prohibit an override of two or more levels; and, most importantly, does not prohibit override to Level One.

The defendant's retroactive application of the override provisions of A.D. 9.2 (2006), Reply brief Exhibit A, creates a substantial risk of increased incarceration. A.D. 9.2 (2006) limits overrides to one per sentence. A.D. 9.2 (2006) limits overrides to reduction of overall risk level to one level only; e.g., from 4 to 3 or 3 to 2, but not 3 to 1. A.D. 9.2 (2006) prohibits override of overall risk score to Level One, community release.

If the Court deems the 1989 classification manual authentic, the Commissioner or her designee is authorized

5

to override the plaintiff from his current Level Three overall risk score, to Level One for the purpose of community release to a private home or halfway house. The defendant is, however, applying A.D. 9.2 (2006) retroactively to the disadvantage of the plaintiff. The difference between the 1989 classification manual and A.D. 9.2 (2006), as regards the plaintiff, is the difference between the plaintiff, in the former instance, being eligible to apply for community release at this time or, in the latter instance, having to wait two years to apply for parole under §54-125a and eight years to apply for nonparole release under 18-100(e). The defense's claim that the matter of override does not present a genuine dispute of material fact was another ploy to salvage the motion for summary judgment, and the Court was persuaded.

**III.** Administrative Directives, Manuals, misdirection.
The defense's 2-13-07 response to the plaintiff's 12-28-06 request for documents, request #3, yielded a document later identified as the 1989 classification manual, passing it off as the 1989 Administrative Directive 9.2. A.D. 9.2, however, was born on March 25, 1991. Confer plaintiff's Exhibit J, Transmittal Memorandum, showing that A.D. 9.2 superseded A.D. 1.6 on March 25, 1991. Then the

same document was produced in response to plaintiff's document request #10 as the 1989 classification manual. The Court, in granting summary judgment, neither acknowledged A.D. 1.6 nor the ambiguity of the responses to requests for documents #3 and #10. See 2-13-07 Defendant's Responses to Plaintiff's Requests for Documents. Any unexplained gaps in materials submitted by the moving party, if pertinent to issues of material fact, justify a denial of a motion for summary judgment. <u>Meinhardt v. Unisys Corp.</u>, 74 F.3d 420, 423 (3d Cir. 1996).

**IV. Inmate initiative and participation; time period.**
   Administrative Directive 1.6, like Gen. Stat. §18-100(e)(18th), sets time criteria neither at the front end or the back end of the sentence regarding community release eligibility. A.D. 1.6 also provides for inmate initiative and participation in classification proceedings. A.D. 9.2 (2006) is silent as to inmate initiative and participation and restricts release to 18 months of end of sentence (nonparole scheme) and 18 months prior to the voted to parole date (hybrid scheme). See Δ's Reply brief, Exh A. A genuine issue of material fact arises where the evidence is such that a reasonable jury, drawing inferences favorable to the nonmoving party, could rule in favor of the

7

nonmoving party. <u>Hetherton v. Mount Sinai Hosp.</u>, 37 F.3d 718, 720 (2d Cir. 1994). The Court overlooked A.O. 116.

V. Public Act 04-234.

The defendant and the Court exaggerate the significance of P.A. 04-234. P.A. 04-234 did not reinstate much of anything. Section 18-100(e) has been on the books since 1978. By restoring language regarding the Commissioner's authority, the legislature is stating the obvious. None of the Supreme Court decisions upholding the Ex Post Facto Clause gives any indication that a state could circumvent the Clause by simply eliminating the authority of the releasing person or entity. See <u>Lynce v. Mathis</u>, 519 U.S. 433, 445 (1997); <u>Weaver v. Graham</u>, 450 U.S. 24, 30 (1981); <u>Lindsey v. Washington</u>, 301 U.S. 397, 399 (1937). See also Connecticut Supreme Court's dictum in <u>Johnson v. Commissioner of Correction</u>, 258 Conn. 804, 817-18 (2001). Nor could the retroactive cessation of release to an approved community residence have withstood the scrutiny of the ex post facto analyses in <u>Lynce</u>, <u>Weaver</u>, <u>Lindsey</u> and <u>Johnson</u>. The going home early statutory provision for release to a private residence is being trivialized by the defendant and the Court. If statutory provisions for

8

for early release could be dismissed as mere program cancellations (E.g. yoga and calisthenics have been discontinued because of overcrowding.), the Ex Post Facto Clause would be eviscerated. The Court asserts the plaintiff did not submit evidence showing that the elimination of release to a private residence creates a risk of increased incarceration. The plaintiff responds that immediate and uncomplicated release to the private residence of a sponsoring friend or relative is, on its face, a speedier process than release to a halfway house where there are more applicants than beds and where bureaucratic red tape can delay release by 12 to 18 months.

The 2004 amendment to 18-100(e) was and is innocuous. Once parole was reinstated, that release scheme became DOC's standard mode. There is nothing in the record — not in the defendant's original brief and not in the Classification Reviews of the plaintiff, not in the many briefs filed by the Office of the Attorney General, not in the data supplied by Pei Ti Lee — that the Public Act 04-234 amendment had any significant impact on DOC release policies. That notion is a fiction of the defendant's last minute Reply brief and the Court has been the victim of a mammoth hoax.

9

The last sentence of 18-100(e)(2004) reads: "Any inmate so transferred shall remain under the jurisdiction of said commissioner." This rebuts footnote 11 of the Court's opinion granting summary judgment, which inexplicably states that the new statute does not contain any such supervision requirement.

## VI. Evidence.

The plaintiff submitted an abundance of evidence in opposition to summary judgment.

(a) The texts of §18-100(e)(1989), A.D. 1.6 and the 1989 classification manual, by their plain meaning, show the plaintiff is currently eligible to be considered for early release under the statutes and regulations in effect on November 10, 1989.

(b) Attorney Jonathan Tropp's Affidavit and supporting inmate records show: Out of 10 inmates whose files were examined, 70% were released despite failing to meet one or more of the guidelines listed in the manual. Inmate Daryl Setzer was released three times when he was not within the specified end of sentence window.

(c) Table A attached to the Lee Affidavit shows a decline from thousands released to their homes between 1989 and 1993 dwindling to zero in 2006. P.A. 04-234 had no apparent effect on the statistics. Table A also shows that the prison population increased from 8,899 on

07/01/89 to 18,568 on 07/01/06. P.A. 90-261 and A.D. 9.2 accomplished what they were intended to accomplish: increasing the terms of incarceration for Connecticut inmates, including the plaintiff. The sophistry of the defendant's Reply brief induced the Court to believe that §54-125a (50% parole eligibility law) and A.D. 9.2 enhanced the opportunities for early release, but, inexplicably, the prison population more than doubled. The defendant's Reply brief induced the Court to believe that P.A. 04-234's amendment reinstated something not already there; then the defendant's Reply brief induced the Court to believe that the new language does not potentially create a risk of increased incarceration. Note that P.A. 04-234 has had no discernable impact on the statistics, there being no evidence of shortening of prison terms.

(c) Table C of the Lee Affidavit shows 2,114 inmates with overall risk levels greater than 2 released between September 1989 and January 1990. Parole was not reinstated until 10-1-90, therefore, it is reasonable to infer most of these releases were under §18-100(e)(1987).

(d) Table D shows private residence population increasing from 4,293 to 6,100 from 11-01-89 to 11-01-90, with halfway house placements remaining about the same. Note there is no noticeable change in the numbers after the passage of P.A. 04-234. It is reasonable to infer the increase in halfway house placements in recent years is due to parole under §54-125a and transitional supervision under §18-100c and A.D. 9.2, sec. 11(A), TS applying to sentences 2 years or less.

11

## Conclusion

It is clear from the plain meaning of the statutes and regulations, supported by inferences reasonably drawn from the statistical evidence, that P.A. 90-261 (amending §18-100(e) (1989) and enacting §54-125a, the 50% parole law) created a substantial risk of increasing the plaintiff's term of incarceration in comparison with the statutes and regulations in effect on the date of the crime: §18-100(e)(1989), Admin. Dir. 1.6 and, if authentic, the 1989 classification manual. The Court grossly exaggerates the significance of the amendments to §18-100(e) by P.A. 04-234, stating P.A. 04-234 "reinstated" §18-100(e). Next the Court, without any evidence in support, changes direction and states that elimination of the option of going directly to a private residence from prison is not significant. The Court does not address the failure of the defendants, during the period between the effective date of P.A. 04-234 (10-1-94) and the date of the Reply brief (9-25-07), to make the argument that P.A. 04-234 mooted the plaintiff's claim. Nor did the plaintiff have an opportunity to compile evidence to rebut the defendant's 9-25-07 about face.

For the foregoing reasons, this motion pursuant to Rule 59(e) should be granted.

William Connelly

12

# Exhibit A — Comparison Chart

| 1989 | 2007 |
|---|---|
| **Gen. Stat. § 18-100(e) (1989)** <br>• No time limits at front or back end of sentence. <br>• Allows release to private residence or halfway house. | **Gen. Stat. § 18-100(e) (2007)** <br>• No time limits at front or back end of sentence. <br>• Prohibits release to private residence directly from prison. |
| **A.D. 1.16** <br>• No time limits at front or back end of sentence. <br>• Provides for inmate initiative and participation. | **Gen. Stat. § 54-125a** <br>• Parole eligibility at 50% of sentence. |
| **Classification Manual 1989** <br>• Lists guideline of 30 months to end of sentence. <br>• Allows more than one override per sentence. <br>• Allows override of two or more levels. <br>• Allows override to Level One (community release). | **A.D. 9.2 (2006)** <br>• Lists guideline of 18 months to end of sentence. <br>• Limits override to one per sentence. <br>• Limits override to one level. <br>• Prohibits override to Level One (community release). |

13

Certification:

This is to certify that a copy of this motion was mailed to Steven R. Strom, Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105; Tel: (860) 808-5450; fax: (860) 808-5591.

Date: 11-12-07

William Connelly
#189009
Enfield C.I.
289 Shaker Road
Enfield, CT 06082

14